Alright, our next case is People v. Hall. Please proceed, Counsel. May it please the Court, Counsel. My name is Maggie Fine and I represent the defendant, Ms. Tiffany Hall. Ms. Hall pled guilty in June of 2008 to five charges. It was four counts of murder and one count of intentional homicide with a fetus. These charges arose from two events in late 2006. In following her plea, she was sentenced to a mandatory life in prison. Now, in November of 2013, Ms. Hall filed the present post-conviction petition, which the trial court dismissed at the first stage. And that's the problem in this case. It's simply that the trial court dismissed too early. At the first stage of post-conviction proceedings, indigent defendants are pro se. And like Ms. Hall, many have mental health issues or learning disabilities or haven't gotten very far in their education. And it's for this reason that the pleading standard at the first stage is extremely low. Petitions at the first stage should be liberally construed and they need to state only the gist of a single constitutional claim. If there's a close case, it should go to stage two. If even a single claim meets this standard, the petition can go to stage two and it's at that point that an attorney will be appointed for the petitioner. They can weed out the bad claims, figure out which claims have more support, and the state can actually move to dismiss at that point and also offer an answer with detailed allegations. In this case, Ms. Hall supported three claims of constitutional error. But because only one is needed for a man, I'll be focusing on just the first issue from the opening brief. But I'm happy to take questions from any. Now, at the time of the plea, Ms. Hall was held in jail on handicap charges. She was accused of murdering a pregnant woman and her unborn child. And she was also accused of murdering the same woman's three young children. In her petition, she has alleged that while at the jail, she was being threatened to the point that she was induced to plead guilty. She included an order from the trial court where it was ordered that she not be kept in general population early in the proceedings. And in her petition, she alleges that at some point, she was taken out of protective custody. Again, the threat started. She told her attorneys about the threats. And they told her, do not tell the judge. This would look bad for you. Now, these allegations are true. Ms. Hall's plea was the result of fear. It was the result of threats in jail. In other words, it was involuntary. Now, at this early stage, the first stage of proceedings, these factual allegations have to be taken as true, unless they're completely contradicted by the record or fantastic or delusional. Ms. Hall's attorneys have not yet testified about these threats at all. They haven't denied instructing Ms. Hall to hide threats from the judge. They haven't explained what they may have done or not done to alleviate the threats and the fear. And they haven't explained how they ensured that the plea was voluntary and not a result of trying to get out of a dangerous situation at the jail. These are all off-the-record facts, which can't be dismissed on the basis of the proceed pleading alone. Now, the state relies on people being Newhoffen to say that Ms. Hall should not proceed to stage 2 and receive an attorney. But in Newhoffen, there were no allegations that the defendants were advised by a professional, who was appointed as their advocate, they should withhold information from the trial court. In Newhoffen, the defendants were representing themselves in the guilty plea. So when the state's attorney was asking them questions about what's going on, are you being threatened, and they said no, they were the sole people interacting with the state's attorney in front of the court. Here, we have Ms. Hall alleging that her appointed advocate, who is a professional, who knows more than her, told her, don't worry about this, don't tell the judge about the threats, that would be a bad idea. So that's a completely different ballgame. Importantly, the Post-Conviction Hearing Act was created to allow defendants to present evidence of unfairness even when the record seems regular on the face. For example, in Washington, the defendant pled guilty and he was sentenced to 25 years in prison. He filed a post-conviction petition alleging that counsel had told him that he'd worked on a secret deal with the state and the court for 14 years. The Supreme Court held they needed to have a hearing on the truth or falsity of this allegation of bad advice and the secret deal from his attorney. Here, Ms. Hall has alleged that counsel advised her to withhold information from the court. This undermines the regularity that's apparent on the face of the record, and as a result, Ms. Hall should be allowed to have counsel to help shape her claim, find further support, or move forward on the other claims. A significant difference between Newhalton and this case is that this was a sua sante dismissal by the court. In Newhalton, the state actually filed a motion to dismiss, and here, it was simply the court. This wasn't even allowed when Newhalton was decided. It wasn't until 1983 that sua sante dismissals were allowed, and they're only allowed for petitions that are frivolous or patently without merit. This means that a quick look at the record should show that the petition is absolutely untrue. This was a huge change in the history of the Post-Conviction Hearing Act because it meant that indigent defendants would be pro se at that initial stage. In 1988, the Supreme Court approved such dismissals on the understanding that the pleading standard was very low for the first stage. It would be attainable by the young, the uneducated, the mentally ill. The Supreme Court has reiterated again and again the need for these low standards. In Edwards and Rivera in 2001, they said no partial summary dismissals and that the petition needed only a limited amount of detail. In Hodges in 2009, they defined frivolous and patently without merit. And it means that the factual allegations have to be fantastic or delusional to be ignored, and the legal theories need to be indisputably meritless, which is completely contradicted by the record. Now in Brown in 2010, the court again reiterated indisputably meritless means completely contradicted. So some seeming inconsistencies with the record isn't enough to sustain summary dismissal. Again, Ms. Hall has alleged that her plea was the result of fear, not voluntary choice. What she hid from the court, she says she did on advice of counsel. And these allegations are not delusional, and they're not completely contradicted by the record as it now stands. This is not the type of first-stage dismissal that was envisioned by the legislature or by the Supreme Court in approving. Therefore, we would ask that this court reverse this dismissal and remain for the appointment of counsel for responsive pleadings from the state. If there are no questions... I don't believe so. Thank you, counsel. All right, Mr. Majors. May it please the court, counsel, this is my first time here, so I don't know all the rules, and I don't know the acoustics. If I'm doing anything wrong, please let me know. We'll let you know, counsel. I've already sent a motion in to withdraw argument one. Counsel must have gotten it because there was no comment on that. As she stated, this involved the murder of four people, a 1-year-old, a 2-year-old, a 7-year-old, and then Jamila Tustle, who was, I think, 26 when she was murdered. The reason I mention that is I think, and my assumptions are usually wrong, but I assume this is being recorded, and I noticed in the brief that we have misspelled Jamila's name. We've at least two or three times put her name in there, and I apologize to everyone for that. The daughter, her daughter was J-I-N, now Janella, and her was Jamila. Argument one, the state briefly has put four hearings over the course of a year where respondents have denied any problems in the jail or any problems from anyone, and in getting ready for this, I discovered there was a fifth hearing. I have it over there. It's C-40, I think, common law record, C-40. It's part of the arraignment transcription. So in addition to these four hearings, there was a hearing on August 15 of 07 about her speedy trial rights, and again, she denies any problems with her attorneys, denies any problems with anybody in the jail. The only reason I cited that Neuhaufen case, if that's how it's pronounced, is it was a Fifth District case, and it was a counter to their Chrysler case where there was one question, F, and that was, of course, remanded. And then Neuhaufen, if I'm pronouncing that correctly, was distinguishable because it was a more elaborate hearing. Well, here we have, by my count, now, five separate hearings over the course of over a year, 50 questions and answers showing that there's no problems with her lawyer, no problems with the defense, no problems with their theory, no problems with anyone in the jail. Counsel, did she respond directly to the court's inquiry, the defendant? I believe so, Judge. I put it in my brief. If I'm in error, I don't notice it. No, I'm not... I just... I think what the judge saw was a very extremely serious case. You know, still, there's many relatives here of not only her family but all these other people. I think the judge was being very solicitous to her. That word solicitous is in the Neuhaufen case. Anything but her. Anything at all. We've got a multiple murder case here. We have a young woman. We don't know anything about her. And I think the judge was bending over backwards to just ferret out anything that was wrong. Now, I didn't ask the question, is there another inmate threatening you in the jail? But he did ask questions like, how are you being treated at the jail? Fine. Any problems? No. Any problem with anyone? No. I know some judges in the northern part of the state have what they call a free flight checklist of 100 questions to rattle off during a guilty plea to especially a serious crime to ward off this type of thing. But I don't know how many more questions the judge would have to ask. That's 50. Does 100 do it? I don't know. I'm not being facetious. I just don't know. The second argument has to do with her claims of ineffective assistance to counsel. She hits back. You have to go in the back. Sorry. She hits this jameled constable 26 over the head with a chair leg. She's got tape all ready to go. She's got a razor all ready to go. She's got something to work on the fetus all ready to go. Cuts her open. She dies from blood loss. Goes out to a state park, calls the cops on herself and says, I was raped and I was pregnant and this is the result, goes to the hospital, refuses attention. What's the point here? She calls her boyfriend, Mr. Warren, and says, hey, I killed the jamele and I cut the baby up. Warren writes her out to the police. So who cares what she told the police? They're a case of some. Second case, and I noticed in their first brief they challenged both cases. Now they only challenge one. First brief is 06 and 07. Now they only challenge 07. The second case, Mr. Collins, the father of three of these children, perhaps four, I don't know, says, yeah, I drive my kids off with her and they never saw me again. So she kills the mother, cuts the baby out. A few days later, she kills his three kids. We need any police testimony for that? I don't think so. There's overwhelming evidence of guilt in both these cases. I don't care what the police did or what she alleged they did. There's still overwhelming evidence of guilt. So the second problem of Strickland is not met. Now, the third argument has to do with their allegations that counsel was ineffective for failing to investigate insanity. There's nothing in her petition about insanity. Now, this case is remanded. I mean, it's somewhat understandable this court may decide to remand it for a brief hearing or a second stage, which may go to a brief hearing, about what she was told by other convicts in the jail. My question is, what can they raise? Can they raise insanity then? I think they waive it. I think those Jones cases, Jones 1 and Jones 2, say no. You waive it. If you forfeit it, your only option is a successive petition, not raise it up in a second or third stage. And Dr. Cudjoe talked to her three times, talked to family members, said she was fit to stand trial. Heilbrunner was hired as a mitigation expert. He was supposed to come in at the death penalty and say, no, no, no, give her the benefit. They never had a death penalty. It was not on the table. Resnick said he couldn't say anything favorable about the defendant. So what we have here is a woman with overwhelming evidence of four murders and the death of an unborn child, who takes three to four death penalties off the table for a guilty plea, and now says, I was coerced into it by the other inmates. All the cases cited by my opponent, myself, don't deal with inmates. This was sheriff, sheriff's deputy, state's attorney, somebody like that. Why is it meritless? Because it's totally contradicted by the record. Questions? No questions. Thank you. Rebuttal. Quick. Quick. So turning first to the issue of her yes or no answers to the court, and it may be five different hearings, and she did answer herself. Her attorney wasn't answering for her, at least in some of the hearings. That really doesn't resolve that, particularly at the first stage, because she's given an explanation for that irregularity. She said that my attorneys told me it would be bad for me, and not to try to get the judge to intervene. And again, this wasn't the court engaging her at length and asking a lot of follow-ups on it. These are just yes or no questions. That doesn't mean that this, we're not asking for a plea to be withdrawn right now. All we're asking is for you to be remanded to the second stage so that an attorney can help her shape her claims, look for further support. Maybe once he speaks to her and explains to her his duty of candor, this won't be there anymore. But for now, on the first stage, if this did in fact happen, she would have no means of relief for the simple reason that she answered yes or no at her attorney's advice before pleading guilty. You know, counsel asks, how can you avoid remand? How many questions is it going to take? I think in most cases, attorneys may not tell their clients, you know, be untruthful to the court, just go along with it. But in some cases, that happens. This first stage hearing being remanded to the second stage is for that special case. You can't allow the plea to stand in violation of due process. You can't just short circuit the Post-Conviction Hearing Act like this and cut off at that first stage. Turning to the evidence that mental, the ineffective assistance of mental health, counsel says that insanity was not in her post-conviction. But she says quite clearly, counsel was ineffective for failing to look into my mental health condition. And she points to the Hellbrenner Report. If you look at the Hellbrenner Report, he says mental health issues are predominant in this case as to the moment of commission and mitigation. I can actually look up the wording for you. I think it's in the brief. They're predominant issues in this case. They are relevant to the commission of the crimes as well as mitigation. So this idea that he was hired only for mitigation or that defense counsel knew this, we don't know that at the first stage. All we know is that counsel told the court, all the Chicago experts agree, sanity is not an issue. And then you have this report of a defense expert coming in two days later saying, insanity might be an issue. You could look into it further. At the first stage, I think that's more than enough to go back, appoint counsel, have him look around, figure out what exactly is going on. And then the final issue is this idea that we're only challenging the 2006 conviction, or the 2006 cases, which would be the pregnant woman and her unborn child, as opposed to the 2007 case, which is the three young children. The ineffective assistance for failing to suppress a concussion is focused on the three children that were found dead. And in that case, the prejudice for ineffective assistance would be that that confession was really the evidence of her guilt. There was no direct physical evidence, like in the other case. And as to the other case, the 2006 case, the prejudice is that she was insane at the time that it occurred. So she's shown arguable prejudice, which is the standard at the first stage for both. But suppression of her confession goes to the 2007 case, and insanity goes to the 2006 case. And I'm sorry if there was confusion as to that. There are no questions? I don't believe so. Thank you, Counsel. We will take this case under advisement.